IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRYAN CROSS PLAINTIFF

V. Case No. 4:25-CV-00928-KGB-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual and/or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

Bryan Cross applied for Title II disability and disability-insurance benefits, alleging disability beginning March 31, 2020. (Tr. at 13, 167). His claim was denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 75, 86, 94. Following a telephone hearing on June 3, 2024, *id*. at 28–59, the ALJ concluded that Cross was not disabled. *Id*. at 13–23. Cross requested review, and on August 14, 2025, the Appeals Council found there was no basis for reviewing the ALJ's decision. *Id*. at 1. The ALJ's decision now stands as the final decision of the Commissioner,

and Cross seeks judicial review, submitting four points of error. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

## II. THE COMMISSIONER'S DECISION

At step one of the sequential five-step analysis,[1] the ALJ found that Cross had not engaged in substantial gainful activity since March 31, 2020. (Tr. at 15). At step two, the ALJ identified three severe impairments: moderate stenosis of the lumber spine, disc bulges, and morbid obesity. *Id*. After finding at step three that none of Cross's impairments or combination of impairments met or medically equaled a listed impairment, *id*. at 16–17, the ALJ determined that Cross had the residual functional capacity ("RFC") to perform sedentary work, except that he could: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and never work around unprotected heights. *Id*. at 17–21. At step four, the ALJ found that Cross was unable to perform his past relevant work as a maintenance mechanic, which was very heavy work, but that he could perform sedentary jobs—including document preparer, food and beverage order clerk, and surveillance-system monitor—that exist in significant numbers in the national economy. *Id*. at 21–23. Consequently, the ALJ concluded that Cross was not disabled. *Id*. at 23.

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B. Cross's Arguments on Appeal

Cross argues that the ALJ (1) failed to evaluate whether Cross could sustain full-time work when determining his RFC; (2) failed to perform a function-by-function assessment when determining his RFC; (3) did not articulate the supportability and consistency of certain medical evidence; (4) neglected to address Cross's limitations in persistence and pace due to pain and medication side effects when determining his RFC; and (5) insufficiently analyzed how Cross's obesity affected his ability to perform work-related activities. (Doc. 6 at 8–17). The Court will address each argument below.

#### 1. The ALJ properly assessed the evidence of record to determine Cross's RFC.[2]

Cross makes several arguments related to the ALJ's formulation of the RFC. (Doc. 6 at 8–10, 13–15). First, Cross contends that the ALJ "did not evaluate whether [Cross] could sustain work activity on a regular and continuing basis." *Id*. at 9. Instead, the ALJ found that Cross could perform sedentary work without explaining how the record supports "sustained full-time employment."[3] *Id*. Cross next maintains that the ALJ should have included additional restrictions in the RFC—limitations on persistence and pace—based on record evidence establishing that Cross's pain and prescribed medications made him drowsy and unable to function throughout the day. *Id*. at 13–14. Finally, Cross cites Social

---

[2] In both his first, second, and fourth points, Cross alleges error related to the ALJ's RFC determination. (Doc. 6 at 8–10, 13–15). For efficiency, this Court addresses all of those arguments under a single heading.

[3] Cross does not appear to claim that he is categorically unable to perform sedentary work with some restrictions; rather, he asserts that the ALJ erred in finding that he can do so on a regular and consistent basis. (Doc. 6 at 9).

Security Regulation ("SSR") 96-8p as requiring "the ALJ to explain how the evidence supports each functional conclusion, including limitations related to sitting, standing, walking, and maintaining concentration and persistence," and he asserts that the ALJ failed to "explain how the evidence supports each functional conclusion" in this case. *Id*. at 9.

An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). In determining a claimant's RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect [the] RFC." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

A reviewing court should "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [the ALJ is] not require[d] to mechanically list and reject every possible limitation." *Nash v. Commissioner, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018) (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)). If the ALJ discussed how the evidence in the record supports his RFC conclusion, he has met the requirements for establishing an RFC. *Smith-Jones v. Soc. Sec. Admin., Comm.*, 4:25-CV-00304-LPR-ERE, 2025 WL 3269524, *2 (E.D. Ark. Nov. 24,

2025), *adopted by* 2026 WL 637625 (E.D. Ark. Mar. 6, 2026). Where the ALJ makes specific, not generic, findings regarding an RFC, a court can reasonably infer that the functions the ALJ omitted were those that were not limited. *See Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003) (where the ALJ "did not simply overlook the possibility that Mr. Depover was limited with respect to sitting, standing, or walking when he stated his RFC" but, instead, "implicitly found that Mr. Depover was not limited in these functions," there was no "reason to remand to make the findings explicit").

In determining that Cross could perform sedentary work with some limitations,[4] the ALJ accounted for all of Cross's impairments (severe and non-severe); reviewed Cross's medical history, including discussing the objective medical evidence and medical opinion evidence; and considered Cross's own description of his pain and limitations. (Tr. at 17–21). The ALJ explicitly acknowledged that an individual's RFC "is his ability to do physical and mental work activities *on a sustained basis* despite limitations from his impairments." *Id*. at 14 (emphasis added). Although Cross testified that he could only stand for a few minutes, walk for a quarter of a block, sit for five to ten minutes, and lift a gallon of milk, the ALJ specifically found that the "objective findings in this case do not support the full extent of the claimant's allegations." *Id*. at 20. The ALJ recognized that lumbar MRIs in 2021 and 2022 revealed disc herniations at L3-4 and L4-5 with inferior extrusion, mild neuroforaminal narrowing, and moderate central canal stenosis, *id*. at 18–19;

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

however, the ALJ also found that examinations showed normal gait and station, grossly intact cranial nerves, intact sensation to light touch, normal range of motion in the lower extremities, normal muscle tone, and mostly full strength in the lower extremities. *Id*. at 20. The ALJ noted that, in 2023, Cross reported that he was exercising every day and that Cross's treating physician, Dr. Brad Thomas, provided "several off work and return to work notes" in 2021 and 2022. *Id*. at 20–21.

Furthermore, the ALJ considered the opinions of Dr. William Harrison and Dr. Prianka Gerrish, state-agency medical consultants, finding them not fully persuasive and adopting a more restrictive RFC.[5] (Tr. at 21). In doing so, the ALJ stated that "additional exertional, postural and environmental limitations" were necessary "to be more consistent with findings of . . . morbid obesity, herniated discs, diminished deep tendon reflexes of the lower extremities, positive straight leg raise test on the right, tenderness of the lumbar spine, and deficit to sensation to pinprick at the right anterior thigh and top of the foot." *Id*.

In all, the ALJ devoted nearly half of her opinion to reviewing the medical evidence, Cross's subjective complaints, and the medical opinions, and, based on the record as a whole, the ALJ found that Cross was limited to the least physically demanding work available—sedentary work.[6] (Tr. at 17–21). Thus, Cross's argument that the ALJ failed to

[5] Dr. Harrison found that Cross could lift and carry twenty pounds occasionally and ten pounds frequently and that he could stand or walk for up to two hours a workday. (Tr. at 63–65). Dr. Gerrish found that Cross could perform light work with some postural and environmental limitations. *Id*. at 70–72.

[6] "While diagnostic imaging revealed herniations at L3-4 and L4-5 of the lumbar spine, and examination revealed tenderness and a limited range of motion of the lumbar spine, intermittent slight weakness of the lower extremity, diminished deep tendon reflexes, and at times decreased sensation to pinprick of the lower extremity, such findings would be accommodated by a reduction to sedentary work with additional postural and environmental limitations." (Tr. at 20).

explain how the record supports full-time employment and each functional conclusion, (Doc. 6 at 9), is without merit.

As for additional limitations related to persistence, pace, and off-task time that Cross claims the ALJ failed to address, "[w]hether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and 'it is not this Court's role to reweigh that evidence.'" *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022)). While the record shows that Cross reported drowsiness and fatigue as side effects of some of his medications, *see, e.g*. (Tr. at 521, 1125), which the ALJ acknowledged, *id*. at 18, and perhaps could have supported additional limitations, "[t]he mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner . . . does not allow this Court to reverse the decision of the ALJ." *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." *Ash v. Colvin*, 812 F.3d 686, 689–90 (8th Cir. 2016) (quoting *Johnson*, 390 F.3d at 1070).

Because the ALJ provided a thorough analysis of Cross's functional abilities and provided a well-reasoned explanation for finding he could sustain sedentary work with

some limitations, this Court is satisfied that substantial evidence supports the ALJ's RFC determination.[7]

**2. Pain management and physical therapy treatment records are not medical opinions requiring analysis under 20 C.F.R. § 404.1520c.**

Cross next argues that the ALJ erred when evaluating "treating pain-management and physical therapy observations documenting medication-induced sedation and functional interference" by not articulating how she considered the supportability and consistency factors.[8] (Doc. 6 at 11). Cross maintains that these observations were based on repeated clinical encounters and consistent with Cross's longitudinal treatment history, yet the ALJ failed to explain "why these findings lacked support or were inconsistent with other evidence in the record." *Id*.

---

[7] Cross also argues that, because the ALJ did not assign limitations related to persistence and pace in the RFC, "the resulting vocational testimony cannot support a denial of benefits." (Doc. 6 at 15). However, because substantial evidence supports the ALJ's RFC, there is no error at step five. *See Kraus v. Saul*, 988 F.3d 1019, 1027 (8th Cir. 2021) (stating VE's testimony constitutes substantial evidence if it is in response to a hypothetical mirroring an RFC finding supported by substantial evidence).

[8] On January 28, 2017, the Social Security Administration promulgated new regulations governing how ALJs assess medical opinion evidence. These rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 C.F.R. § 416.920c(a)–(c) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

ALJs are required to consider five categories of evidence: (1) objective medical evidence, which includes "medical signs" and "laboratory findings"; (2) medical opinions, which include "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"; (3) other medical evidence, which is "not objective medical evidence or a medical opinion, [but includes] judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"; (4) evidence from nonmedical sources, such as statements from the claimant; and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a). Only the second and fifth categories—medical opinions and prior administrative medical findings—require the ALJ to address supportability and consistency. 20 C.F.R.§ 404.1520c (outlining how ALJs "consider and articulate medical opinions and prior administrative medical findings" after March 27, 2017).

Because none of the records Cross identifies are medical opinions that require specific articulation of supportability and consistency, this argument is flawed. The records he cites are examination and treatment records containing his self-reports of symptoms, the physical-examination findings of medical practitioners, and results of various treatment modalities. (Tr. at 521, 584, 592, 633, 825, 1125, 1135, 1137, 1153, 1156). None of the records qualify as "medical opinion" evidence. *See Austin v. Kijakazi*, 52 F.4th 723, 729 n.3 (8th Cir. 2022) ("Mere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions,' . . . and, therefore, not subject to 20 C.F.R. § 404.1520c.") (quoting 20 C.F.R. § 404.1513(a)(3)); *see also Asha S. v.*

*Kijakazi*, Civ. No. 21-1014, 2022 WL 4226230, *10 (D. Minn. Sept. 13, 2022) (physical-therapy evaluations were not medical opinions); *Murphy v. Kijakazi*, No. 1:20-CV-154, 2021 WL 3033404, *7 (E.D. Mo. 2021) (physician's report was not a medical opinion because it did not describe the claimant's functional abilities).

Because, for these records, the ALJ was not required to undertake the analysis described in 20 C.F.R. § 404.1520c, including consideration of supportability and consistency, the Court finds no error.

**3. The ALJ properly considered Cross's obesity in formulating the RFC.**

Lastly, Cross claims that the ALJ did not perform an individualized assessment of how Cross's obesity affects his ability to perform work-related activities, particularly in combination with his other impairments. (Doc. 6 at 16). Cross asserts that the ALJ's obesity analysis is "largely . . . boilerplate language." *Id*.

The Court of Appeals for the Eighth Circuit has held "that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Baker v. Colvin*, 620 F. App'x 550, 557 (8th Cir. 2015) (quoting *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009)). In *Baker*, the Eighth Circuit affirmed the Commissioner in a similar case, noting that the ALJ made numerous references to Baker's obesity, found it was a severe impairment at step two, found it did not qualify as a listed impairment at step three, and listed Baker's height and weight. *Id*. "Because the ALJ specifically took [Baker]'s obesity into account in his evaluation, we will not reverse that decision." *Id.* (quoting *Heino*, 578 F.3d at 881–82).

Likewise, here, the ALJ considered Cross's obesity throughout the evaluation process. First, the ALJ found Cross's obesity was a severe impairment at step two. (Tr. at 15). Next, at step three, the ALJ stated that she "fully considered obesity in the context of the case record in making this decision, and obesity does not equal a listing alone or in combination with another impairment(s)." *Id*. at 17. Thereafter, when formulating the RFC, the ALJ considered Cross's "weight, including the impact on his ability to ambulate as well as his other body systems." *Id*. at 20. Notably, the ALJ also cited Cross's obesity as a basis for partially rejecting the medical opinions of two state agency medical consultants and ultimately assigning a more restrictive RFC. *Id*. at 21 ("the undersigned has provided additional exertions, postural and environmental limitations to be more consistent with findings of the claimant's morbid obesity"). Based on these facts, the ALJ properly considered the functional effects of Cross's obesity throughout the sequential evaluation process; the Court finds no basis for reversal.

## IV. CONCLUSION

Substantial evidence supports the Commissioner's decision that Cross was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 6th day of August, 2026.

Benecia Moore

UNITED STATES MAGISTRATE JUDGE