**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**BRYAN CROSS** **PLAINTIFF**

**v.** **Case No. 4:25-cv-00928-KGB**

**COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

**ORDER**

Before the Court is the Recommended Disposition ("Recommendation") submitted by United States Magistrate Judge Benecia B. Moore (Dkt. No. 10). Plaintiff Bryan Cross submitted objections to the Recommendation (Dkt. No. 11). After a *de novo* review of the record, including the Recommendation and Cross's objections, the Court adopts the Recommendation in its entirety as this Court's findings in all respects. The Court writes separately to address Cross's objections.

**I. Background**

Cross applied for disability and disability-insurance benefits, alleging disability beginning on March 31, 2020 (Dkt. Nos. 5, at 18; 5-5, at 2). Cross's claim was denied both initially and upon reconsideration, and Cross requested a hearing before an Administrative Law Judge ("ALJ") (Dkt. No. 5-4, at 3, 14, 21). Following a telephone hearing on June 3, 2024 (Dkt. No. 5-2, at 29–60), the ALJ concluded that Cross was not disabled (Dkt. No. 5-2, at 14–24). Cross requested review, and on August 14, 2025, the Appeals Council affirmed the decision (*Id.*, at 2). The ALJ's decision now stands as the final decision of defendant Commissioner of the Social Security Administration ("Commissioner").

At step one of the sequential five-step analysis, the ALJ found that Cross had not engaged in substantial gainful activity since March 31, 2020 (*Id.*, at 16). At step two, the ALJ identified three severe impairments: moderate stenosis of the lumber spine, disc bulges, and morbid obesity

(*Id.*). After finding at step three that none of Cross's impairments or combination of impairments met or medically equaled a listed impairment (*Id.*, at 17–18), the ALJ determined that Cross had the residual functional capacity ("RFC") to perform sedentary work, except that Cross could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and never work around unprotected heights (*Id.*, at 18–22). At step four, the ALJ found that Cross was unable to perform Cross's past relevant work as a maintenance mechanic but could perform sedentary jobs that exist in significant numbers in the national economy (*Id.*, at 22–24). Therefore, the ALJ concluded that Cross was not disabled (*Id.*, at 24).

Cross subsequently filed this suit (Dkt. No. 1), and Cross alleged that the ALJ made multiple errors in the ALJ's assessment of Cross's disability status (Dkt. No. 6). After assessing Cross's claims, Judge Moore recommended that the ALJ's decision be affirmed and that judgment be entered for the Commissioner (Dkt. No. 10). Cross objected to the Recommendation on two grounds (Dkt. No. 11).

## II. Legal Standard

In reviewing an ALJ's decision, the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion, whereas substantial evidence on the record as a whole entails a more scrutinizing analysis." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal citations omitted). "Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take

into account whatever in the record fairly detracts from that decision." *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (alterations in original) (internal citation omitted).

"Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision." *Reed*, 399 F.3d at 920 (internal citation and quotations omitted). An ALJ's decision will be disturbed only "if it falls outside the available zone of choice." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)). "A decision is not outside of the zone of choice because this court might have reached a different conclusion if we were the initial factfinder." *Id*. "If the record supports two inconsistent conclusions, this court must affirm the Commissioner's choice among those two conclusions." *Id.* (quoting *Bagwell v. Comm'r, Soc. Sec. Admin*., 916 F.3d 1117, 1119 (8th Cir. 2019)).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal citation omitted).

## III. First Objection

Cross first objects that the Recommendation incorrectly found that the ALJ acted properly in the ALJ's consideration of Cross's drowsiness as a side effect of Cross's medication (Dkt. No. 11, at 3–6). Specifically, Cross argues that the ALJ did not consider Cross's drowsiness or explain how Cross's drowsiness affected the ALJ's RFC determination (*Id.*).

In determining a claimant's RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect [the] RFC." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)). In considering a claimant's symptoms, the ALJ must consider "[t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms . . . " 20 C.F.R. § 404.1529(c)(3)(iv).

A reviewing court should "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations," but [the ALJ is] not require[d] . . . to mechanically list and reject every possible limitation." *Nash v. Comm'r, Soc. Sec. Admin*., 907 F.3d 1086, 1090–91 (8th Cir. 2018) (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)).

Here, in determining Cross's RFC, the ALJ explicitly considered Cross's allegation "that his medication makes him drowsy, and [that Cross] would not want to leave the house" (Dkt. No. 5-2, at 19). As discussed in the Recommendation, the ALJ devoted nearly half the ALJ's opinion to reviewing the medical evidence, Cross's subjective complaints, the medical opinions, and the record as a whole (*Id.*, at 18–22). Although the ALJ did not "mechanically list and reject every possible limitation," such as Cross's reported drowsiness, specifically, *Nash*, 907 F.3d at 1090–91, the ALJ stated that the ALJ "considered all symptoms" in formulating the RFC (Dkt. No. 5-2, at 18), explicitly considered the reported drowsiness side effect of Cross's medication (*Id.*, at 19), cited evidence that Cross was awake, alert, and oriented (*Id.*, at 21), and determined that Cross's reported symptoms, including drowsiness, were not "fully consistent with the evidence as a whole" in formulating the RFC (*Id.*, at 22).

The record supports the ALJ's determination that Cross's reported drowsiness was not fully consistent with the evidence in the record (*See* Dkt. Nos. 5-7, at 14; 5-8, at 41, 104, 112, 657, 676)

(reporting that Cross was awake, alert, and oriented); *see also* Dkt. No. 5-8, at 657 (Dr. Eugene Becker reporting in May 2022 that Gabapentin "causes extreme fatigue" for Cross and changing Cross's prescription to Lyrica), 650 (Cross continuing to take Lyrica in July 2022 and denying "sleep loss" and "decreased energy"), 663 (reporting the same in August 2022 and "den[ying] any side effects" of Cross's medication), 665 (reporting prescriptions for Lyrica and Tizanidine, a muscle relaxer, and reporting no sleep loss or decreased energy in January 2023), 668 (reporting the same in March 2023)).

The ALJ did not "disregard evidence or ignore [a] potential limitation[]," but rather considered Cross's reported drowsiness, reviewed the record, cited record evidence, stated that Cross's symptoms were not fully consistent with the record, and made an RFC determination without "mechanically list[ing] and reject[ing] every possible limitation." *Nash*, 907 F.3d at 1090–91. The ALJ's RFC determination, including the consideration of Cross's drowsiness symptoms, is within the "zone of choice" and is supported by substantial evidence. *Ross*, 92 F.4th at 778. Therefore, Cross's first objection fails to rebut the Recommendation.

**IV. Second Objection**

Cross next objects that the Recommendation incorrectly found that the ALJ acted properly in considering and explaining Cross's physical therapists' treating documentation (Dkt. No. 11, at 6–8). Specifically, Cross argues that the ALJ "did not explain why isolated notations of normal strength or gait outweighed repeated abnormal straight-leg raise testing, diminished reflexes, and sensory deficits documented throughout the record" in the ALJ's analysis of the RFC (*Id.*, at 7).

"[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his

limitations." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). "Accordingly, it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Id.*

ALJs are required to consider five categories of evidence: (1) objective medical evidence, which includes "medical signs" and "laboratory findings"; (2) medical opinions, which include "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"; (3) other medical evidence, which is "not objective medical evidence or a medical opinion, [but includes] judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"; (4) evidence from nonmedical sources, such as statements from the claimant; and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a).

For medical opinion evidence, an ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion, 20 C.F.R. § 416.920c(a), but is required to analyze whether medical opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 416.920c(a), (c).

Here, the evidence that Cross complains was not properly evaluated was Cross's "abnormal straight-leg raise testing, diminished reflexes, and sensory deficits throughout the record." (Dkt. No. 11, at 7). To the extent Cross argues, as he did in his brief before Judge Moore (Dkt. No. 6, at 12–13), that the ALJ failed to address the supportability and consistency factors in medical opinions related to straight-leg raise testing, diminished reflexes, and sensory deficits, the Court agrees with the Recommendation that the evidence regarding these symptoms is not found in medical opinions, but rather this evidence appears in examination and treatment records containing

Cross's self-reported symptoms, physical examination findings of medical professionals, and results of various treatment modalities (Dkt. Nos. 10, at 10; 5-7, at 163; 5-8, at 41, 104, 112, 153, 345, 657).

Because this evidence is not medical opinion evidence, the ALJ is not required to analyze the supportability and consistency factors in the ALJ's assessment of those records specifically. *See Austin v. Kijakazi*, 52 F.4th 723, 728 n.3 (8th Cir. 2022) ("Mere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions,' . . . and, therefore, not subject to 20 C.F.R. § 404.1520c.") (quoting 20 C.F.R. § 404.1513(a)(3)); *see also Asha S. v. Kijakazi*, Case. No. 21-1014, 2022 WL 4226230, at 10 (D. Minn. Sept. 13, 2022) (physical therapy evaluations are not medical opinions); *Murphy v. Kijakazi*, Case No. 1:20-cv-154, 2021 WL 3033404, at 7 (E.D. Mo. 2021) (physician's report was not a medical opinion because it did not describe the claimant's functional abilities).

To the extent Cross argues that the RFC is not based on all the relevant evidence or that the ALJ failed to explain how the evidence in the record supports the ALJ's conclusion, that argument is belied by the record. As previously discussed, the ALJ thoroughly explained Cross's reported symptoms and the medical evidence in the record (Dkt. No. 5-2, at 18–22). The ALJ specifically noted evidence of Cross's "straight leg raise test" (*Id.*, at 20, 21, 22), diminished reflexes (*Id.*, at 21, 22), and "sensory deficits" (*Id.*, at 19; *see also id.*, at 23–26 (describing Cross's "sensations")). The ALJ then stated that Cross's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that the "objective findings in this case do not support the full extent of [Cross's] allegations" (*Id.*, at 21).

The ALJ next cited to record evidence and explained that Cross's reported leg issues, diminished reflexes, and sensory issues were undercut by the evidence in the record of "a normal

gait and station, grossly intact cranial nerves, intact sensation to light touch, a normal range of motion of the lower extremities, normal muscle tone, and mostly full strength of the lower extremities" (*Id.*). Further, the ALJ explained that an accommodation to sedentary work with additional postural and environmental limitations would accommodate Cross's "intermittent slight weakness of the lower extremity, diminished deep tendon reflexes, and at times decreased sensation to pinprick of the lower extremity" (*Id.*).

It is clear from the ALJ's opinion that the ALJ considered all of the relevant evidence in formulating Cross's RFC, including the ALJ's consideration of Cross's reported leg issues, diminished reflexes, and sensory issues. The ALJ's analysis of those symptoms is supported by substantial evidence in the record as a whole, and even if there is evidence which would support a different conclusion, the ALJ's determination falls within the "zone of choice." *Ross*, 92 F.4th at 778. Therefore, Cross's second objection fails to rebut the Recommendation.

**V. Conclusion**

For the foregoing reasons, the Court adopts the Recommendation in its entirety as this Court's findings in all respects (Dkt. No. 10). The Commissioner's decision is affirmed.

It is so ordered this 25th day of September, 2026.

Kristine G. Baker
Kristine G. Baker
Chief United States District Judge